JAROSLAWICZ & JAROS LLC

225 Broadway, 24th Floor

New York, NY 10007

Telephone: (212) 227-2780

Facsimile: (212) 227-5090

Harris Marks, Esq.

*Counsel to STEINHARDT MANAGEMENT, INC.*

Robert J. Tolchin, Esq.

   Of Counsel

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW JERSEY

------------------------------------------------------------ X

In re:

    THEODORE R. BOHN,

                Debtor.

------------------------------------------------------------ X

STEINHARDT MANAGEMENT, INC.,

                Plaintiff,

    -against-

THEODORE R. BOHN,

                Defendant.

----------------------------------------------------------- X

Case No. 13-35854 (RG)

Chapter 7

**COMPLAINT TO DENY
DISCHARGEABILITY OF
DEBT PURSUANT TO
<u>11 U.S.C. § 523</u>**

Adv. Pro. No.:

      Plaintiff STEINHARDT MANAGEMENT, INC., by its attorneys JAROSLAWICZ & JAROS LLC, alleges for its complaint against the Defendant-Debtor as follows:

<u>**JURISDICTION**</u>

      1.    This action is being commenced against Defendant-Debtor THEODORE R. BOHN pursuant to: (i) FRBP 7001(1) to recover money or property; and

(ii) FRBP 7001(6) to determine the dischargeability of a debt of the Debtor under 11 U.S.C. § 523(a)(2)(A) and § 523(a)(6), and to declare the debt liquidated to the extent necessary. This action is a core proceeding and jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1334 and § 157(b).

## PARTIES

2.    Plaintiff STEINHARDT MANAGEMENT, INC. (hereinafter "STEINHARDT" or "plaintiff") is a corporation created and existing pursuant to the laws of the State of New York.

3.    Defendant THEODORE R. BOHN is an individual, is an attorney, and is the Debtor herein (hereinafter "Debtor" or "Defendant-Debtor")

## THE BANKRUPTCY FILING

4.    On November 26, 2013, at or about 11:48 a.m., Debtor filed a voluntary Chapter 7 bankruptcy petition.

## COMMON ALLEGATIONS

5.    On July 21, 2011, Debtor commenced an action *pro se* in New York State Supreme Court, New York County, under Index No. 102357/11, naming STEINHARDT as a defendant therein, among other defendants.

6.    The complaint as against STEINHARDT was frivolous and intended solely to harass STEINHARDT.

7.    STEINHARDT moved before the trial court (Hon. Milton Tingling, *J.S.C.*) to dismiss the complaint and for sanctions to be imposed against Debtor for his

wrongful conduct in prosecuting a frivolous lawsuit whose purpose was to harass STEINHARDT.

8.      The trial court denied the motion and STEINHARDT appealed to the immediate court of appeal, the Appellate Division, First Department ("the Appellate Division").

9.      The Appellate Division reversed the trial court and remanded the matter for a hearing on amount of monetary sanctions to be imposed against Debtor for his frivolous conduct. (*See* Exhibit 1; reported at *Bohn v. 176 W. 87th St. Owners Corp.,* 106 A.D.3d 598 (1st Dep't 2013).

10.      In pertinent part, the Appellate Division held as follows:

> Order[], Supreme Court, New York County (Milton A. Tingling, *J.*), entered . . . April 18, 2012, which denied defendant[]-appellant['s] motion[] pursuant to CPLR 3211 and 3212 and defendant Steinhardt Management's motion for sanctions against plaintiff, unanimously reversed, on the law, without costs, the motion[] granted, and the matter remanded for a determination of the appropriate attorneys' fees.
>
> * * *
>
> We find that the complaint is without merit and apparently was undertaken to harass defendants (*see Great Am. Ins. Cos. v. Bearcat Fin. Servs., Inc.,* 90 A.D.3d 533 [1st Dep't 2011], *lv dismissed* 18 N.Y.3d 951 [2012]). Accordingly, an award of attorneys' fees to Steinhardt is appropriate, and we remand the matter for a determination of the amount of fees incurred.                    (**EXHIBIT 2**)

11.      New York's Rules of Court, codified at title 22 N.Y.C.R.R. Part 1200 (Rules of Professional Conduct) provides in pertinent part as follows:

§ 3.1 (a):  "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous."; and

§ 3.3 (b) (2) "A lawyer's conduct is 'frivolous' for purposes of this Rule if . . . the conduct . . . serves merely to harass or maliciously injure another".                                   (**EXHIBIT 3**)

12.     On remand, the trial court appointed a referee (Hon. Ira Gammerman, *J.H.O.*) to hear and recommend the dollar amount of monetary sanctions to be entered against Debtor for his frivolous conduct. (**EXHIBIT 4**).

13.     Debtor sat through, participated in, and questioned witnesses throughout the sanctions hearing conducted the morning of November 26, 2013. (Exhibit 5)

14.     At the end of the hearing, even as the referee was about to announce the sanctions amount, the Debtor stated that his Chapter 7 petition had just been filed, and claimed that the proceeding was stayed.

15.     If the Debtor was correct, his brinksmanship conduct wasted the time of everyone involved in the proceeding, including the attorneys and the court.

16.     Upon information and belief, however, 11 U.S.C. § 362(b)(4) exempts actions brought pursuant to governmental police or regulatory powers, and therefore sanctions hearings are exempt from the Automatic Stay. *See Alpern v. Lieb*, 11 F.3d 689 (7th Cir. 1993).

17.     The referee proceeded to render his recommendation that Debtor owes STEINHARDT $34,400 in the nature of attorneys' fees for frivolous conduct, and "so-ordered" it on December 10, 2013 (**EXHIBIT 5**).

18.     Two days later, on December 12, 2013, the trial court ordered the action stayed by reason of the bankruptcy (**EXHIBIT 6**).

19.     Because of the Automatic Stay, the Debt amount has not been reduced to a judgment in the New York State Supreme Court.

20.     The sanctions recommendation of $34,400 was based upon the factual finding by the Appellate Division that the Debtor's conduct against STEINHARDT constituted harassment.

21.     The sanctions recommendation of $34,400 was based upon the factual finding by the Appellate Division that the Debtor's conduct against STEINHARDT was frivolous.

22.     The Debtor owes STEINHARDT a debt of $34,000 (the "Debt").

## AS AND FOR A FIRST CAUSE OF ACTION

23.     Plaintiff repeats and restates each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth herein.

24.     The Debt owed by Debtor to STEINHARDT is for money, property, or services obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the Debtor's or an insider's financial condition.

25.     Accordingly, and pursuant to 11 U.S.C. § 523 (a) (2) (A), the aforesaid amount is an obligation owed by Debtor that is not dischargeable.

## AS AND FOR A SECOND CAUSE OF ACTION

26.     Plaintiff repeats and restates each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth here.

- 5 -

27.    The Debt owed by Debtor to STEINHARDT is for a willful and malicious injury by the Debtor to STEINHARDT or to STEINHARDT'S property.

28.    Accordingly, and pursuant to 11 U.S.C. § 523 (a) (6), the aforesaid amount is an obligation owed by Debtor that is not dischargeable.

## AS AND FOR A THIRD CAUSE OF ACTION

29.    Plaintiff repeats and restates each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth here.

30.    To the extent the Debt has not been deemed to have been liquidated, the amount of the Debt owed to STEINHARDT should be liquidated and determined to be $34,400 either by this Court or relief granted by this Court to allow the amount to be liquidated in the New York State Court.

## AS AND FOR A FIFTH CAUSE OF ACTION

31.    Plaintiff repeats and restates each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth here.

32.    As a result of the foregoing, Debtor is liable to STEINHARDT for the sum of $34,400, together with statutory interest thereon, and attorneys' fees.

**WHEREFORE**, it is respectfully requested that the Court enter a judgment in favor of plaintiff STEINHARDT MANAGEMENT, INC.:

a)    to the extent the debt has not been liquidated, DECLARING the debt owed to plaintiff by Debtor-Defendant THEODORE R. BOHN to be $34,400;

b)    DECLARING the Debt owed by Debtor-Defendant THEODORE R. BOHN to plaintiff to be non-dischargeable pursuant to 11 U.S.C. § 523;

- 6 -

       c)      ADJUDGING Debtor-Defendant THEODORE R. BOHN liable to plaintiff for the sum of $34,400, together with statutory interest, and attorneys' fees; and

       d)      AWARDING plaintiff such other or further relief that the Court deems is just and proper.

Dated: February 17, 2014

                  JAROSLAWICZ & JAROS LLC
                  *Counsel to STEINHARDT*
                  *MANAGEMENT, INC.*
                  225 Broadway, 24th Floor
                  New York, NY 10007
                  Telephone: (212) 227-2780
                  Facsimile: (212) 227-5090
                  by:  s/Harris Marks, Esq.
                  and
                  s/Robert J. Tolchin, Esq.,
                    of counsel

## SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT:  HON. MILTON A. TINGLING
                    J.S.C.
                                    *Justice*

PART. 44

Bohn
                    -v-
176 w. 87 th

INDEX NO. 14357/11
MOTION DATE 11/30/12
MOTION SEQ. NO. 1

The following papers, numbered 1 to _____, were read on this motion to/for _____

| | |
|---|---|
| Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____ | No(s)._____ |
| Answering Affidavits — Exhibits _____ | No(s). _____ |
| Replying Affidavits _____ | No(s). _____ |

Upon the foregoing papers, it is ordered that this motion is

The defendant Steinhardt Management, Inc. moves to dismiss the complaint and an award against the plaintiff for commencing a frivolous lawsuit. The plaintiff opposes and cross-moves to disqualify the movant's counsel. The defendant Steinhardt opposes the cross-motion.

A court considering a motion [to dismiss] pursuant to CPLR 3211 is required to accept the allegations as true and determine whether those facts are sufficient to plead any cause of action. *Leon v. Washington*, 84 N.Y.2d 83, 88, 638 N.Y.S.2d 972 (1994), Whether a plaintiff can ultimately establish its allegations is not taken into consideration in determining a motion to dismiss. *Philips South Beach, LLC v. ZC Specialty Insurance Company*, 55 A.D.3d 493, 867 N.Y.S.2d 386 (1st Dept. 2008).

In the case at bar, the motion is denied as the allegations plead are sufficient to defeat the motion.

The cross-motion is denied as baseless.

FILED

APR 18 2012

NEW YORK
COUNTY CLERK'S OFFICE

Dated: 4/6/12 _____ , J.S.C.

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

1. CHECK ONE: ................................................ ☐ CASE DISPOSED        ☑ NON-FINAL DISPOSITION
2. CHECK AS APPROPRIATE: ......................MOTION IS: ☐ GRANTED ☑ DENIED ☐ GRANTED IN PART ☐ OTHER
3. CHECK IF APPROPRIATE: ................................................ ☐ SETTLE ORDER        ☐ SUBMIT ORDER
                                                ☐ DO NOT POST  ☐ FIDUCIARY APPOINTMENT ☐ REFERENCE

# EXHIBIT 1

| |
|---|
| **Bohn v 176 W. 87th St. Owners Corp.** |
| 2013 NY Slip Op 03755 [106 AD3d 598] |
| May 23, 2013 |
| Appellate Division, First Department |
| Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431. |
| As corrected through Wednesday, June 26, 2013 |

| |
|---|
| **Theodore Bohn, Respondent,**<br>**v**<br>**176 W. 87th St. Owners Corp. et al., Defendants, and Steinhardt Management,**<br>**Inc., Appellant. Theodore Bohn, Respondent, v 176 W. 87th St. Owners Corp.**<br>**et al., Defendants, and Seth Friedland et al., Appellants. Theodore Bohn,**<br>**Appellant, v 176 W. 87th St. Owners Corp. et al., Respondents, et al.,**<br>**Defendants. Robert Cantor, Esq., et al., Nonparty Respondents.** |

—[*1] Cantor, Epstein & Mazzola LLP, New York (Robert I. Cantor of counsel), for 176 W. 87th Street Owners Corp., Richard Feldman and Sonnenschein, Sherman & Deutsch, LLP, appellants.

Jaroslawicz & Jaros LLC, New York (Michelle Holman of counsel), for Steinhardt Management, Inc., appellant.

Friedland Laifer & Robbins, LLP, New York (Eugene P. Hanson of counsel), for Seth Friedland and Friedland Laifer & Robbins, appellants.

Theodore Bohn, New York, appellant pro se/respondent pro se.

Cantor, Epstein & Mazzola LLP, New York (Robert I. Cantor of counsel), for 176 W. 87th Street Owners Corp., Paul Gottsegen, Insignia Management, Halstead Management, Richard Feldman, Sonnenschein, Sherman & Deutsch, LLP, Robert Cantor and Cantor, Epstein & Mazzola LLP, respondents.

Orders, Supreme Court, New York County (Milton A. Tingling, J.), entered April 17,

# EXHIBIT 2

2012 and April 18, 2012, which denied defendants-appellants' motions pursuant to CPLR 3211 and 3212 and defendant Steinhardt Management's motion for sanctions against plaintiff, unanimously reversed, on the law, without costs, the motions granted, and the matter remanded for a determination of the appropriate attorneys' fees. The Clerk is directed to enter judgment in favor of defendants-appellants dismissing the complaint as against them. Order, same court and Justice, entered May 16, 2012, which, to the extent appealed from as limited by the briefs, denied plaintiff's motion for sanctions against nonparty Robert Cantor Esq., and to disqualify Cantor and Cantor, Epstein, & Mazzola LLP from representing Feldman and Sonnenschein, Sherman & Deutsch, LLP, unanimously affirmed, without costs. Order, same court and Justice, entered April 17, 2012, which granted Cantor's motion to quash a subpoena, unanimously affirmed, without costs.

In 2003, plaintiff, a shareholder-tenant in the cooperative located at 176 West 87th Street in Manhattan, commenced an action (the 2003 action) against defendant 176 W. 87th Street Owners Corp., among others, alleging that in late 1999 he began complaining to defendant Paul Gottsegen, the managing agent, that his apartment was being made uninhabitable by odors entering it from a restaurant on the ground floor of the building. He alleged that his complaints were ignored and that although the Department of Environmental Protection issued several [*2]violations based on the odors, defendants failed to ameliorate the problem, which forced him to sell his apartment.

The complaint in this action, commenced in July 2011, centers on the allegations that defendants provided false letters to the Environmental Control Board about who was authorized to represent the cooperative in defending against the violations, that the letters later disappeared, and that defendants acted to conceal the existence of the letters.

The prima facie tort cause of action fails to allege that defendants, or any of them, acted solely to injure plaintiff (see *WFB Telecom. v NYNEX Corp.*, 188 AD2d 257, 258 [1st Dept 1992], *lv denied* 81 NY2d 709 [1993]). It also fails to allege special damages that are specific and measurable (see *id.*; *Wehringer v Helmsley-Spear, Inc.*, 91 AD2d 585, 586 [1st Dept 1982], *affd* 59 NY2d 688 [1983]). In any event, the limitations period for a claim of prima facie tort is one year (*Havell v Islam*, 292 AD2d 210 [1st Dept 2002]). The

complaint does not clearly set forth exactly when defendants engaged in the acts giving rise to the cause of action, but, whether it was in the years preceding the commencement of the 2003 action or during the pendency of that action, the limitations period had expired by July 2011, when plaintiff commenced this action.

The fraud cause of action is not pleaded with the requisite detail (*see* CPLR 3016 [b]; *Small v Lorillard Tobacco Co.*, 252 AD2d 1, 15 [1st Dept 1998], *affd* 94 NY2d 43 [1999]). Plaintiff alleges that he relied to his detriment on defendants' false representations as to the authorization to defend, but he does not identify false representations of material facts on which he relied, the alleged representations were not all made to him, and he does not explain how he relied on them. As to defendants' representations about efforts undertaken to ameliorate the odors in his apartment, plaintiff does not allege what was said to him. Moreover, he could not have reasonably relied on those representations, given that he was litigating against defendants, and he could not have been harmed by them, given that the violations were sustained after an administrative hearing.

In any event, the fraud claim is barred by the statute of limitations, which is the greater of six years from the date the cause of action accrued or two years from the time the plaintiff discovered the fraud (CPLR 213 [8]). Plaintiff's cause of action accrued some time before 2003, when he was involved in the various administrative proceedings and before he sold his apartment. To the extent he may later have discovered improprieties in connection with the authorization letters, that discovery preceded the commencement of this action by more than two years.

Plaintiff concedes that his Judiciary Law § 487 cause of action is inapplicable to 176 W. 87th St Owners Corp. and Steinhardt Management, neither of which is an attorney. As to the attorney defendants, the cause of action fails to allege that plaintiff suffered any injury proximately caused by any deceit or collusion on their part, and no such injury can reasonably be inferred from the allegations in the complaint (*Seldon v Spinnell*, 95 AD3d 779 [1st Dept 2012], *lv denied* 20 NY3d 857 [2013]; *Rozen v Russ & Russ, P.C.*, 76 AD3d 965 [2d Dept 2010]). To the extent the Judiciary Law § 487 cause of action is based on conduct that occurred before 2005, it is in any event barred by the six-year statute of limitations (*see Guardian Life Ins. Co. of Am. v Handel*, 190 AD2d 57, 62 [1st Dept

1993]).

We find that the complaint is without merit and apparently was undertaken to harass defendants (*see Great Am. Ins. Cos. v Bearcat Fin. Servs., Inc.*, 90 AD3d 533 [1st Dept 2011], *lv dismissed* 18 NY3d 951 [2012]). Accordingly, an award of attorneys' fees to Steinhardt is [*3]appropriate, and we remand the matter for a determination of the amount of fees incurred.

Contrary to his contention, plaintiff failed to establish that Cantor made material factual statements that were false or in direct conflict with his client's testimony and should be sanctioned therefor. Nor did plaintiff establish any basis for disqualifying Cantor and his firm from representing Feldman and Sonnenschein, Sherman & Deutsch, LLP.

The court properly granted Cantor's motion to quash the subpoena served on him, since it sought documents and testimony protected by the attorney-client privilege.

We have considered plaintiff's other arguments and find them unavailing. Concur—Gonzalez, P.J., Friedman, Moskowitz and Feinman, JJ.

## NEW YORK STATE UNIFIED COURT SYSTEM

### PART 1200 –

# RULES OF PROFESSIONAL CONDUCT



**APRIL 1, 2009**

THESE RULES OF PROFESSIONAL CONDUCT WERE PROMULGATED AS JOINT RULES OF THE APPELLATE DIVISIONS OF THE SUPREME COURT, EFFECTIVE APRIL 1, 2009. THEY SUPERSEDE THE FORMER PART 1200 (DISCIPLINARY RULES OF THE CODE OF PROFESSIONAL RESPONSIBILITY).

THE NEW YORK STATE BAR ASSOCIATION HAS ISSUED A PREAMBLE, SCOPE AND COMMENTS TO ACCOMPANY THESE RULES. THEY ARE NOT ENACTED WITH THIS PART, AND WHERE A CONFLICT EXISTS BETWEEN A RULE AND THE PREAMBLE, SCOPE OR A COMMENT, THE RULE CONTROLS.

# EXHIBIT 3

law firm will be able to provide competent and diligent representation in the matter.

**(e)** A person who:

(1) communicates information unilaterally to a lawyer, without any reasonable expectation that the lawyer is willing to discuss the possibility of forming a client-lawyer relationship; or

(2) communicates with a lawyer for the purpose of disqualifying the lawyer from handling a materially adverse representation on the same or a substantially related matter, is not a prospective client with the meaning of paragraph (a).

## RULE 2.1:
## ADVISOR

In representing a client, a lawyer shall exercise independent professional judgment and render candid advice. In rendering advice, a lawyer may refer not only to law but to other considerations such as moral, economic, social, psychological, and political factors that may be relevant to the client's situation.

## RULE 2.2:
## [RESERVED]

## RULE 2.3:
## EVALUATION FOR USE BY THIRD PERSONS

**(a)** A lawyer may provide an evaluation of a matter affecting a client for the use of someone other than the client if the lawyer reasonably believes that making the evaluation is compatible with other aspects of the lawyer's relationship with the client.

**(b)** When the lawyer knows or reasonably should know that the evaluation is likely to affect the client's interests materially and adversely, the lawyer shall not provide the evaluation unless the client gives informed consent.

**(c)** Unless disclosure is authorized in connection with a report of an evaluation, information relating to the evaluation is protected by Rule 1.6.

## RULE 2.4:
## LAWYER SERVING AS THIRD-PARTY NEUTRAL

**(a)** A lawyer serves as a "third-party neutral" when the lawyer assists two or more persons who are not clients of the lawyer to reach a resolution of a dispute or other matter that has arisen between them. Service as a third-party neutral may include service as an arbitrator, a mediator or in such other capacity as will enable the lawyer to assist the parties to resolve the matter.

**(b)** A lawyer serving as a third-party neutral shall inform unrepresented parties that the lawyer is not representing them. When the lawyer knows or reasonably should know that a party does not understand the lawyer's role in the matter, the lawyer shall explain the difference between the lawyer's role as a third-party neutral and a lawyer's role as one who represents a client.

## RULE 3.1:
## NON-MERITORIOUS CLAIMS AND CONTENTIONS

**(a)** A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous. A lawyer for the defendant in a criminal proceeding or for the respondent in a proceeding that could result in incarceration may nevertheless so defend the proceeding as to require that every element of the case be established.

**(b)** A lawyer's conduct is "frivolous" for purposes of this Rule if:

(1) the lawyer knowingly advances a claim or defense that is unwarranted under existing law, except that the lawyer may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law;

(2) the conduct has no reasonable purpose other than to delay or prolong the resolution of litigation, in violation of Rule 3.2, or serves merely

to harass or maliciously injure another; or

(3) the lawyer knowingly asserts material factual statements that are false.

## RULE 3.2:
## Delay of Litigation

In representing a client, a lawyer shall not use means that have no substantial purpose other than to delay or prolong the proceeding or to cause needless expense.

## RULE 3.3:
## Conduct Before a Tribunal

**(a)** A lawyer shall not knowingly:

(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;

(2) fail to disclose to the tribunal controlling legal authority known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or

(3) offer or use evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter, that the lawyer reasonably believes is false.

**(b)** A lawyer who represents a client before a tribunal and who knows that a person intends to engage, is engaging or has engaged in criminal or fraudulent conduct related to the proceeding shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal.

**(c)** The duties stated in paragraphs (a) and (b) apply even if compliance requires disclosure of information otherwise protected by Rule 1.6.

**(d)** In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse.

**(e)** In presenting a matter to a tribunal, a lawyer shall disclose, unless privileged or irrelevant, the identities of the clients the lawyer represents and of the persons who employed the lawyer.

**(f)** In appearing as a lawyer before a tribunal, a lawyer shall not:

(1) fail to comply with known local customs of courtesy or practice of the bar or a particular tribunal without giving to opposing counsel timely notice of the intent not to comply;

(2) engage in undignified or discourteous conduct;

(3) intentionally or habitually violate any established rule of procedure or of evidence; or

(4) engage in conduct intended to disrupt the tribunal.

## RULE 3.4:
## Fairness to Opposing Party and Counsel

A lawyer shall not:

**(a)** (1) suppress any evidence that the lawyer or the client has a legal obligation to reveal or produce;

(2) advise or cause a person to hide or leave the jurisdiction of a tribunal for the purpose of making the person unavailable as a witness therein;

(3) conceal or knowingly fail to disclose that which the lawyer is required by law to reveal;

(4) knowingly use perjured testimony or false evidence;

(5) participate in the creation or preservation of evidence when the lawyer knows or it is obvious that the evidence is false; or

(6) knowingly engage in other illegal conduct or

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: _____HON. MILTON A. TINGLING_____          PART ___44___
                              J.S.C.
                                                          *Justice*

---

Index Number : 102357/2011                    INDEX NO. _____

BOHN, THEODORE                                 MOTION DATE _7/25/13_

vs.

176 W. 87TH ST. OWNERS                         MOTION SEQ. NO. _____

SEQUENCE NUMBER : 017

COUNSEL FEES, EXPENSES

---

The following papers, numbered 1 to _____ , were read on this motion to/for _____

Notice of Motion/Order to Show Cause — Affidavits — Exhibits  _____  | No(s). _____

Answering Affidavits — Exhibits  _____  | No(s). _____

Replying Affidavits  _____  | No(s). _____

Upon the foregoing papers, it is ordered that this motion is

# FILED

## SEP 24 2013

### COUNTY CLERK'S OFFICE
### NEW YORK

ORDERED that the issue of attorney's fees, if any, in the above captioned matter, is referred to a Special Referee to hear and report with recommendations, except that, in the event of and upon the filing of s stipulation of the parties, as permitted by CPLR 4317, the Special Referee, or another person designated by the parties to serve as referee, shall determine the aforementioned issue; and it is further

ORDERED that this motion is held in abeyance pending receipt of the report and recommendations of the Special referee and a motion pursuant to CPLR 4403 or receipt of the determination of the Special referee or the designated referee; and it is further

ORDERED that a copy of this order with notice of entry shall be served on the Clerk of the Judicial Support office to arrange a date for the reference to a Special Referee.

Dated: ___9/12/13___                          _____, J.S.C.

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

1. CHECK ONE: .................................................... ☐ CASE DISPOSED          ☑ NON-FINAL DISPOSITION

2. CHECK AS APPROPRIATE: ...........................MOTION IS: ☐ GRANTED  ☐ DENIED  ☐ GRANTED IN PART  ☐ OTHER

3. CHECK IF APPROPRIATE: ............................................... ☐ SETTLE ORDER          ☐ SUBMIT ORDER

                                                ☐ DO NOT POST   ☐ FIDUCIARY APPOINTMENT   ☐ REFERENCE

# EXHIBIT 4

SCANNED ON 9/24/2013

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT: ___HON. IRA GAMMERMAN, J.H.O.___                          PART _22_

_____ _stice_

Index Number : 102357/2011                                    INDEX NO. _____

BOHN, THEODORE                                                MOTION DATE _____

vs

176 W. 87TH ST. OWNERS                                        MOTION SEQ. NO. _____

Sequence Number : 019

HEAR AND REPORT

The following papers, numbered 1 to _____ , were read on this motion to/for _____

Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____    | No(s). _____

Answering Affidavits — Exhibits _____    | No(s). _____

Replying Affidavits _____    | No(s). _____

Upon the foregoing papers, it is ordered that this motion is

Hearing conducted
Report issued.
Cos reserved. K Mermelle
it is so ordered
Enter

FILED

DEC 10 2013

NEW YORK
COUNTY CLERK'S OFFICE

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE _____
FOR THE FOLLOWING REASON(S):

Dated: __11/26/13__                                    _____ , J.S.O.

                                        HON. IRA GAMMERMAN, J.H.O. JHO

1. CHECK ONE: ......................................... ☐ CASE DISPOSED    ☒ NON-FINAL DISPOSITION

2. CHECK AS APPROPRIATE: .....................MOTION IS: ☐ GRANTED   ☐ DENIED   ☐ GRANTED IN PART   ☐ OTHER

3. CHECK IF APPROPRIATE: ......................... ☐ SETTLE ORDER         ☐ SUBMIT ORDER

                                        ☐ DO NOT POST    ☐ FIDUCIARY APPOINTMENT    ☐ REFERENCE

# EXHIBIT 5

1

2   SUPREME COURT OF THE STATE OF NEW YORK
    NEW YORK COUNTY : CIVIL TERM : JHO
3   -------------------------------------x
    THEODORE BOHN,
4
                              Plaintiff,           INDEX NO.
5                                                  102357/2011
                    -against-
6
    176 W. 87TH ST. OWNERS CORP., its former
7   and current officers and directors,
    PAUL GOTTSEGEN, INSIGNIA MANAGEMENT,
8   HALSTEAD MANAGEMENT, MARK RUDD, ESQ.,
    FREDERICK RUDD, RICHARD KLEIN, ROBERT
9   HOCHMAN, ESQ., HOCHMAN & COHEN,
    STEINHARDT MANAGEMENT, INC., MORTON
10  GETMAN, SETH FRIEDLAND, ESQ., FRIEDLAND,
    LAIFER & ROBBINS, MICHAEL DORRY, DOMONIC
11  PICININNI, CURTIS VASILE, P.C., ONE
    BEACON INSURANCE COMPANY, RICHARD FELDMAN,
12  ESQ., SONNENSCHEIN, SHERMAN & DEUTSCH, LLP,
    X, Y and Z, 10 JOHN DOES, and 10 JANE DOES,
13
14   **FILED**              Defendants.
    -------------------------------------x
15                          November 26, 2013
              SEP 3 0 2013
16                          60 Centre Street
              NEW YORK       New York, New York
17     COUNTY CLERK'S OFFICE
    B E F O R E :
18
              HON. IRA GAMMERMAN, JHO.
19

20  A P P E A R A N C E S :

21  THEODORE BOHN
        501 5th Avenue, Suite 1900
22      New York, New York 10017
        Plaintiff Pro Se
23

24
                              KAREN M. MENNELLA
25                            Senior Court Reporter

26

```
 1

 2    A P P E A R A N C E S (Cont'd):

 3    CANTOR, EPSTEIN & MAZZOLA, LLP
          49 West 37th Street, 7th Floor
 4        New York, New York 10018
      BY: AYANA M. ROBERTSON, ESQ.
 5        Attorneys for the Defendants
          176 West 87th Street Owners Corp.,
 6        Paul Gottsegen, Insignia Management,
          Halstead Management, Richard Feldman, Esq.,
 7        and Sonnenschein, Sherman & Deutsch, LLP.

 8    JAROSLAWICZ & JAROS, LLC
          225 Broadway, 24th Floor
 9        New York, New York 10007
      BY: MICHELLE HOLMAN, ESQ.
10        Attorneys for the Defendant
          Steinhardt Management
11
      FRIEDLAND, LAIFER & ROBBINS, LLP
12        62 William Street, 3rd Floor
          New York, New York 10005
13    BY: EUGENE P. HANSON, ESQ.
          SETH D. FRIEDLAND, ESQ.
14        Attorneys for the Defendants
          Friedland, Laifer & Robbins, LLP.
15

16

17

18

19

20

21

22

23

24

25

26
```

```
 1                       Proceedings
 2            THE COURT:  This case is 604.  It's here pursuant
 3    to both an order of the Appellate Division, First Department
 4    and Justice Tingling, as I recall.
 5            The Appellate Division has already concluded that
 6    the Jaroslawicz firm is entitled to -- or the attorney --
 7    the client represented by the Jaroslawicz firm is entitled
 8    to reimbursement of all or part of the fees incurred or
 9    charged by the Jaroslawicz firm in connection with the
10    representation of that party, and that's Michelle -- oh, no,
11    no.  That party is -- which party did the Jaroslawicz firm
12    represent?
13            MS. HOLMAN:  Steinhardt Management.
14            THE COURT:  Based on the conclusion by the
15    Appellate Division that the claim that was asserted by the
16    Pro Se Plaintiff was frivolous, and so we have to deal with
17    that.  There's another aspect of the case in which another
18    party represented by which counsel?
19            MR. HANSON:  Friedland.
20            THE COURT:  You're Mr. Hanson, correct.
21            MR. HANSON:  Yes.
22            THE COURT:  What's the name of your client?
23            MR. HANSON:  The Friedland Defendants.  Seth
24    Friedland.
25            THE COURT:  With respect to that Defendant Justice
26    Tingling apparently has not concluded whether or not that
```

1                              Proceedings

2        Defendant is entitled to reimbursement from the Pro Se

3        Plaintiff for all or part of the fees incurred or paid and

4        referred that matter to a referee, although in my view

5        that's really something that the judge can decide, but I'm

6        prepared to make a recommendation and if I conclude that the

7        situation with respect to that Defendant is essentially the

8        same as the situation with respect to Defendant that the

9        Appellate Division has ruled on, I'll deal with the amount.

10              And there's, as I understand it, a third motion

11       pending before Justice Tingling for the same type of relief

12       by another of the Defendants.

13              MS. ROBERTSON:  That's correct, Your Honor.

14              THE COURT:  Let's start with how much is the -- how

15       much did the client pay the Jaroslawicz firm or owe?  How

16       much does it owe the Jaroslawicz firm for services performed

17       in this case?

18              MS. HOLMAN:  $36,887.50.

19              THE COURT:  Okay.

20              MS. HOLMAN:  Plus expenses.

21              THE COURT:  I beg your pardon?

22              MS. HOLMAN:  Plus expenses of $2,778.83.

23              THE COURT:  And who did most of the work?

24              MS. HOLMAN:  I did most of the work, Judge.

25              THE COURT:  You want to question counsel?

26              MR. BOHN:  No, Your Honor.  I've reviewed the

1                        Proceedings

2     invoices they've submitted.  The only objection I would have

3     to the invoice is that when Mr. Jaroslawicz was here last

4     Your Honor asked whether these were contemporaneously

5     maintained billing records, which Mr. Jaroslawicz --

6          THE COURT:  No.  What he said was, as I recall and

7     the record will reflect it, that that's not the way the law

8     firm maintains records.  What they try to do in a situation

9     like this is sit down with the file, review it and try to

10    make an intelligent and reasonable calculation as to the

11    amount of time that they spent.

12          Based on what type of hourly rate?

13          MS. HOLMAN:  An hourly rate of $400 per hour for me

14    and $550 an hour for David.

15          THE COURT:  Okay.

16          MR. BOHN:  Yes, so that's, you know, my only

17    objection's to the invoice they've submitted is that --

18          THE COURT:  Well, it would seem to me that you,

19    having litigated this case, would be familiar with what

20    amount of time a law firm or lawyers would spend.

21          How many hours is being claimed, Counselor?  Your

22    hours and David's hours.

23          MS. HOLMAN:  My hours, 43 and a half hours.

24    David's hours, 33 and a quarter hours.  And another three

25    hours for another associate, and we believe that that is

26    very low, Judge.

```
1                        Proceedings

2              THE COURT:  Well, based -- I mean, you've litigated

3    this case.  The question is does that -- do you have any

4    question as to whether or not those hours appear to be

5    reasonable?

6              MR. BOHN:  No, I don't have any question about

7    that.

8              THE COURT:  You think they appear to be reasonable?

9              MR. BOHN:  Yes, Your Honor.

10             THE COURT:  All right.  So the claim is how much in

11   total?

12             MS. HOLMAN:  Give me just one moment, please,

13   Judge.

14             THE COURT:  How about the hourly rates, 400 for the

15   associate and 550 for the partner?

16             MR. BOHN:  Well I think those might --

17             THE COURT:  Be a little high?

18             MR. BOHN:  Yes.

19             THE COURT:  Give me the total number of hours,

20   Counselor.

21             MS. HOLMAN:  Total number of hours for David

22   Jaroslawicz is 33 and a quarter.  The total for me is 43 and

23   a half.  And there's another associate who worked on the

24   appeal who also bills at $400 an hour, and he billed three

25   hours.

26             THE COURT:  Okay.
```

1                              Proceedings
2               MS. HOLMAN:  So the total legal fee we're seeking
3       is $36,887.50.
4               THE COURT:  Right.
5               MS. HOLMAN:  Plus expenses of $2,778.83, which is a
6       total of $39,666.33.
7               THE COURT:  All right.  I recommend $30,400 in
8       connection with that aspect of the case.
9               MS. HOLMAN:  Thank you, Your Honor.
10              THE COURT:  Hold on for a moment.
11              MS. HOLMAN:  Thank you, Judge.
12              THE COURT:  Okay.  Now, let me just ask Mr. Bohn,
13      is the claim against Mr. Hanson's client, the one that was
14      dismissed, substantially different from the claim against
15      the clients -- Jaroslawicz client?
16              MR. BOHN:  I think so, Your Honor, yes.
17              THE COURT:  All right.  Then let's -- do you have a
18      witness Mr. Hanson?  How are we going to make this
19      determination?
20              MR. HANSON:  Well, I can testify to the work that I
21      did on the case.
22              THE COURT:  No, that's not the question.  That's
23      not the issue at the moment.  The issue is whether or not
24      the claim against your client was so frivolous that I should
25      make the same decision that the Appellate Division made with
26      respect to Mr. Jaroslawicz's client.

1                          Proceedings
2              MR. HANSON:  Yes, in my opinion it was frivolous.
3     Not only did we obtain reversal on appeal --
4              THE COURT:  Well, that doesn't mean that every
5     lawyer -- every defendant who gets a reversal on appeal is
6     entitled to have his lawyer's fee paid.  Obviously there
7     needs to be more than that, it seems to me.
8              MR. HANSON:  Correct.  We claimed and state any
9     appeal that benefited all defendants in the case --
10             THE COURT:  The issue, as I recall -- do you have a
11    copy of the Appellate Division decision, anybody?
12             MR. HANSON:  I have a copy of the Appellate
13    Division decision.
14             THE COURT:  Your client is who, Mr. Hanson?
15             MR. HANSON:  The Friedland Defendants.
16             THE COURT:  That's the law firm?
17             MR. HANSON:  The law firm and --
18             THE COURT:  Sorry.
19             MR. HANSON:  The law firm Friedland, Laifer &
20    Robbins and the lawyer who started the law firm, Seth
21    Friedland.
22             THE COURT:  Okay.  The Appellate Division, Great
23    American v. Bearcat, a case which I granted sanctions --
24    much to my everlasting regret, it's still alive about a week
25    ago, maybe a month ago -- states we find that the complaint
26    is without merit and apparently was undertaken to harass

1                        Proceedings

2      Defendants.  Accordingly, an award of attorneys' fees to

3      Steinhardt is appropriate.

4            Now, why if the Appellate Division made a

5      determination that the complaint was without merit and was

6      undertaken to harass Defendants, why was it -- why did the

7      Court only decide that Steinhardt's attorneys' fees are the

8      ones to be dealt with?

9            MR. HANSON:  Because, Your Honor, the Steinhardt

10     Defendants were the only ones who at that time had asked for

11     attorneys' fees.

12           THE COURT:  I see.  I see.

13           MR. HANSON:  I emphasize that the Court said that

14     the complaint was apparently intended to harass Defendants

15     Steinhardt.  It's only one Defendant.

16           THE COURT:  I agree.  I agree.  It's your view that

17     had the request been made by any of the other Defendants the

18     Appellate Division would have dealt with it at that point?

19           MR. HANSON:  I'm sure they would have, Your Honor.

20           THE COURT:  Yes, Mr. Bohn?

21           MR. BOHN:  I'm sorry, Judge, that's simply untrue.

22     In fact, the Cantor Epstein firm had a cross motion for

23     sanctions pending, so...

24           THE COURT:  Before the Appellate Division?

25           MS. ROBERTSON:  No, that's not correct.  We had a

26     cross motion for sanctions before Judge Tingling, but we

1                        Proceedings

2      never appealed that aspect of our motion to the Appellate

3      Division.

4              THE COURT:  Okay, so that issue was not before the

5      Appellate Division.

6              MS. ROBERTSON:  Correct.

7              MR. BOHN:  Wait.  I'm not sure if the argument

8      that's now being made that they never appealed --

9              THE COURT:  No.  What they said is when Judge

10     Tingling apparently initially denied all motions to dismiss,

11     that's what prompted the appeal.  I take it when the Cantor

12     firm moved to dismiss on behalf of its client it also asked

13     Judge Tingling to assess sanctions.

14              The judge denied the motion, I take it; is that

15     correct?

16              MS. ROBERTSON:  He denied our motion, but our

17     motion for sanctions was separate than our motion to

18     dismiss.  The motion for sanctions was in connection to a

19     motion to quash where Mr. Bohn was seeking to subpoena the

20     head partner of our law firm.

21              THE COURT:  Okay.  In any event, in connection with

22     the motion to dismiss there was no application for

23     sanctions?

24              MS. ROBERTSON:  Correct.

25              THE COURT:  So that was not anything that was

26     before the Appellate Division?

1                         Proceedings

2              MS. ROBERTSON:  That's correct.

3              THE COURT:  Okay.  All right.  Well, let's deal

4    with it.  How much are you seeking for your firm's work, Mr.

5    Hanson?

6              MR. HANSON:  Actually, I'd like to amend my

7    application, Your Honor.  The last time I said we were only

8    applying for my fees, but the original motion to dismiss was

9    prepared by Seth Friedland himself, and I saw him prepare

10   it.  He spent about a half day dictating it.

11             THE COURT:  But he didn't --

12             MR. HANSON:  Pardon me.

13             THE COURT:  Who billed him for his time?

14             MR. HANSON:  Well, it's --

15             THE COURT:  I'm not -- I had an interesting

16   situation.  I'll tell you, he's not going to get -- I'm not

17   going to assess money to Mr. Friedland for his time.  He

18   didn't pay anybody.

19             Off the record.

20             (Whereupon, there was an off-the-record

21   discussion.)

22             THE COURT:  I don't think that if Mr. Friedland

23   represented himself and didn't pay himself he's entitled to

24   be compensated at his regular rates for the work that he did

25   in representing himself, so let's deal with his obligation

26   to pay someone else.

```
 1                        Proceedings
 2           MR. HANSON:  Okay.  I spent on all --
 3           THE COURT:  What firm?  Your firm is?
 4           MR. HANSON:  Friedland, Laifer & Robbins.
 5           THE COURT:  That's his own firm.
 6           MR. HANSON:  Correct.
 7           THE COURT:  Okay.  So his firm, his own firm,
 8    represented himself?
 9           MR. HANSON:  Represented him and the firm.
10           THE COURT:  Yeah, got it.
11           MR. HANSON:  These were cases that, as the
12    Appellate Division found, were frivolous and intended to
13    harass.
14           THE COURT:  I understand they're frivolous.  The
15    problem is that Mr. Friedland did not incur any expense.
16    Maybe he filed some filing fees.
17           MR. HANSON:  He had to pay me.  I don't work for
18    free.
19           THE COURT:  You're a member of his firm or an
20    employee of his firm?
21           MR. HANSON:  Correct.
22           THE COURT:  An associate, what's your position?
23           MR. HANSON:  I'm an independent contractor working
24    for his firm.
25           THE COURT:  Oh, okay.  All right.  How much did he
26    pay you?
```

1                           Proceedings

2            MR. HANSON:  I don't know what the total amount was

3       that he paid me, but at my billing rate --

4            THE COURT:  Just a minute.  How do you know -- how

5       much did he pay you?  That seems to me his damage.

6            MR. HANSON:  Well, I'm sure Your Honor understands

7       the economics of law firms, I have a billing rate that we

8       bill out to clients.

9            THE COURT:  Listen to me.

10           MR. HANSON:  The time that I spent on this case --

11           THE COURT:  You did work?

12           MR. HANSON:  Yes.

13           THE COURT:  On this matter?

14           MR. HANSON:  Correct.

15           THE COURT:  Did you get compensation from Mr.

16      Friedland?

17           MR. HANSON:  I did get compensation.

18           THE COURT:  How much did you get?

19           MR. HANSON:  I haven't determined that, but I have

20      determined that my compensation would have been at my

21      regular billing rate.

22           THE COURT:  But that's not what it cost Mr.

23      Friedland.  He was sued, he had to pay a legal fee.

24           MR. HANSON:  Correct.

25           THE COURT:  How much did he pay you?  You're an

26      independent contractor?

1                          Proceedings

2              MR. HANSON:  I'd have to do the calculation.  I'd

3        have to do the math.

4              THE COURT:  Can you do it now?

5              MR. HANSON:  I can try.

6              THE COURT:  Okay.

7              MR. HANSON:  I majored in English, so not terribly

8        good at math.

9              THE COURT:  Okay.

10             MR. BOHN:  Your Honor, can I just ask one question?

11             THE COURT:  Yes, Mr. Bohn.

12             MR. BOHN:  I believe Mr. Hanson, when he says he is

13       an independent contractor, he just means that he works for

14       the Friedland firm.  He's not paid as an outside attorney.

15       He's employed by Friedland, Laifer & Robbins.

16             THE COURT:  Just a minute.

17             MR. HANSON:  I'm not an employee of Friedland,

18       Laifer & Robbins.

19             THE COURT:  Did you work on this -- you actually

20       worked on this file?

21             MR. HANSON:  Correct.

22             THE COURT:  How many hours did you work on this

23       file?

24             MR. HANSON:  252.75 hours.

25             THE COURT:  And were you paid by the Friedland

26       firm?

```
 1                          Proceedings
 2              MR. HANSON:  Yes.  It's approximately, if my math
 3       is correct, I'm not sure that it is, approximately $20,329.
 4       There's something wrong here.  I'm missing something.
 5       Upwards of $18,300.  I rounded.
 6              THE COURT:  All right.  That's an amount that was
 7       actually paid to you for the services that you performed on
 8       this matter?
 9              MR. HANSON:  Yes.
10              THE COURT:  Do you want to question Mr. Hanson, Mr.
11       Bohn?  I'll swear him if you're going to question him.
12              MR. BOHN:  Well, I will do that, Your Honor, I just
13       have one or two preliminary questions.  Does that mean that
14       the motion has been granted?
15              THE COURT:  I'm going to recommend, based on the
16       fact that the Appellate Division concluded that the
17       complaint was without merit and was undertaken to harass the
18       Defendants and determined that the party that requested
19       attorneys' fees before the Appellate Division was entitled
20       to it, I'm prepared to recommend to Justice Tingling that
21       all the defendants are entitled to the same relief that the
22       Appellate Division granted the Jaroslawicz firm and
23       recommend the $18,300 that Mr. Hanson just testified to.
24              He wasn't under oath, but I'll give you an
25       opportunity -- at least he represented to me that that was
26       the reasonable amount of compensation for the services that
```

```
 1                          Proceedings
 2      he performed, and I'll give you an opportunity to question
 3      him.   You agreed that the Jaroslawicz number of hours was a
 4      reasonable number of hours.
 5              The question is do you have a dispute with respect
 6      to the amount of time that Mr. Hanson spent on the matter?
 7              MR. BOHN:   Well, Your Honor, I was only asking the
 8      question because this was the subject of a motion, and I
 9      submitted very detailed opposition papers.
10              THE COURT:   To Justice --
11              MR. BOHN:   Tingling.
12              THE COURT:   Well, with respect to the merits -- it
13      seems to me that the decision really is whether or not the
14      underlying lawsuit was started without merit to harass the
15      Defendants.   That decision has already been made by the
16      Appellate Division.
17              MR. BOHN:   Right.
18              THE COURT:   It would be very nice if I were in a
19      position to reverse the Appellate Division, but that's not
20      my role.   So it seems to me that I find that very
21      persuasive.
22              MR. BOHN:   Right.  I understand, Your Honor.
23              THE COURT:   So that the question I'm prepared,
24      therefore, to recommend to Justice Tingling that he follow
25      the lead of the Appellate Division and that he award at
26      least to the Friedland clients the amount of money that was
```

```
1                         Proceedings

2    laid out in connection with this litigation to defend the

3    claim you asserted.  If you want to raise an issue with

4    respect to whether or not that $18,300 is a reasonable

5    number, I'm prepared to listen to your questioning of Mr.

6    Hanson.

7               MR. BOHN:  I just have a few questions.

8               THE COURT:  Of Mr. Hanson?

9               MR. BOHN:  Correct.

10              THE COURT:  Raise your right hand, Mr. Hanson.

11              (Whereupon, Mr. Hanson was sworn in by the Court.)

12              THE COURT:  Give your full name and address to the

13    Court, please.

14              MR. HANSON:  Eugene P. Hanson, H-A-N-S-O-N.  Nine

15    Chester Brook Road, Chester, New Jersey 07930.

16              THE COURT:  Go ahead, Mr. Bohn.

17    DIRECT EXAMINATION BY

18    MR. BOHN:

19       Q    So, Mr. Hanson, how did you arrive at the $18,000

20    figure that you just testified to?

21       A    I multiplied 252 hours, which is fewer than the hours I

22    have here by three quarters of an hour, times $75 an hour, which

23    is the rate that I'm paid by the firm.

24       Q    And are you employed by Friedland, Laifer & Robbins?

25       A    No, I am not.  An independent contractor.

26       Q    So do you -- who are you paid by?
```

```
1                          Proceedings

2     A     I'm paid by Friedland, Laifer & Robbins.

3     Q     And do you receive a W-2?

4     A     No.

5                 THE COURT:  You get a 1099.

6                 THE WITNESS:  1099.

7     Q     Directing your attention to the billing entry dated

8  9/21/11, do you see that line?

9     A     Yes.

10    Q     And first of all -- I'm sorry, did you -- let me back

11 up just a second.

12          Did you prepare these records?

13    A     These records were prepared based upon time sheets that

14 I submitted to our office administrator who prepares our billing

15 records from the time sheets.

16    Q     Okay.  And are those time sheets prepared by hand?

17    A     They are prepared by hand.

18    Q     So you -- these are electronic representations of the

19 handwritten billing records that you submitted; is that correct?

20    A     Correct.

21    Q     Directing your attention to, again, the September 21,

22 2011 entry, do you see where it says research re: CPLR 2308,

23 disobedience of subpoena?

24    A     I do.

25    Q     And what was the reason for that research?

26    A     There was an allegation in your complaint that Mr.
```

1                        Proceedings

2    Friedland had disobeyed a subpoena, and I was researching the

3    CPLR provision on that.

4        Q    Well, did Mr. Friedland appear in connection with that

5    subpoena?

6        A    Pardon me?

7        Q    Did Mr. Friedland appear --

8             THE COURT:  I'm not interested -- see, the problem

9        is I'm not going to go behind the statement by the Appellate

10       Division that the action was started apparently to harass

11       the Defendants, so that you really -- it's not appropriate

12       for me.

13            At this point it would be a waste of everybody's

14       time for me to take the evidence with respect to the

15       underlying merits or lack of merits of the lawsuit that the

16       Appellate Division dealt with.

17            MR. BOHN:  Very well, Your Honor.

18            MR. HANSON:  Exactly.

19       Q    Directing your attention to the same billing entry, do

20   you see where it says "review order to show cause in underlying

21   action"?

22       A    Yes.

23       Q    So how -- so this represents billing for a case

24   unrelated to this one; is that correct?

25       A    No, it was a related case.

26       Q    But it wasn't -- the order to show cause in the

1                          Proceedings

2      underlying action was not billing made necessary by this

3      litigation; is that correct?

4      A      Your allegations in the complaint referenced the

5      underlying action.

6      Q      What need was there to review an order to show cause in

7      the underlying case?

8      A      Sitting here today, I don't remember exactly why.

9             THE COURT:   Okay.   That's the answer.

10     Q      Directing your attention to the next entry two lines

11     down, 9/23/2011, do you see where it says research and review

12     cases re: Form of denial?

13     A      Yes.

14     Q      And what exactly does that mean, form of denial?

15     A      I don't recall.

16     Q      Directing your attention to the bottom page, 9/26/2011,

17     do you see where it says "telephone conference with Dominic

18     Picininni re: Deposition of Richard Feldman"?

19     A      I do.

20     Q      And what was the need for -- what knowledge did Mr.

21     Picininni have re Mr. Feldman's deposition?

22     A      Today I don't recall.

23            THE COURT:   Okay.   That's the answer.

24     Q      Directing your attention to the entry on April 18,

25     2012, do you see where it says "telephone conference with D.

26     Picininni, David Jaroslawicz, Robert Cantor and Judge Tingling's

1                              Proceedings

2    clerk re: Decision and order on motions to dismiss"?

3       A    I do.

4       Q    And so I take it from this entry that you, Mr.

5    Picininni, Mr. Jaroslawicz, Mr. Cantor were on a conference call

6    with Judge Tingling's clerk; is that correct?

7       A    Apparently so.

8       Q    And what was discussed at that time?

9       A    I don't remember.

10      Q    Did you initiate that conference call?

11      A    I don't believe so.

12      Q    Is there a reason that the Plaintiff wasn't included in

13   that conference?

14      A    I have no idea.  I have no idea who initiated it or why

15   the Plaintiff was not included.

16      Q    And was the judge on the phone at any point?

17      A    Not to my recollection.  I don't recall ever speaking

18   to the judge.

19              THE COURT:   That's the answer.

20      Q    Directing your attention to your entry marked --

21   sorry -- entered May 8, 2012; do you see that?

22      A    I do.

23      Q    Draft answers to interrogatories.  Did you ever produce

24   those interrogatories?

25      A    I don't remember.  I didn't produce the

26   interrogatories.

 1                           Proceedings

 2              THE COURT:  All right.  That's the answer.

 3      Q     Directing your attention to the entry dated May 18,

 4   2012; do you see that?

 5      A     Yes.

 6      Q     I'm sorry, one second.  And that says "review

 7   Steinhardt motion to reargue and renew," correct?

 8      A     Correct.

 9      Q     I don't know -- I don't recall Steinhardt having moved

10   to reargue those motions, sir.

11              THE COURT:  What's your question?

12      Q     Do you know whether Steinhardt actually moved to

13   reargue or renew?

14      A     I don't have current recollection of it, but it's in my

15   time sheet.

16              THE COURT:  Go ahead.

17      Q     Again directing your attention to the entry of

18   7/3/2012, do you see the entry "e-mails to and from Dominic

19   Picininni re: New York County civil complaint and amended

20   complaint and case status"?

21      A     Yes.

22      Q     And again, so you're seeking compensation for work

23   performed on a case other than this case and in which you are

24   not -- your client was not a party; is that correct?

25      A     That was the related case referenced in your complaint

26   and part of the basis of the charges against my client,

1                          Proceedings

2    allegations against my client.

3        Q    You're seeking compensation, though, for services

4    performed with respect to a case other than this case to which

5    your client is not a party?

6        A    No, I considered that with respect to this case.  I'm

7    seeking background information from Mr. Picininni.

8        Q    What background information?

9        A    What the status was of the case in New York County

10   Civil Court.

11       Q    That's not an answer to the question.

12            THE COURT:  What's the question?  Don't comment on

13       answers, just ask questions.

14       Q    The question is what information were you seeking on

15   the underlying case?

16            THE COURT:  There was a case in Civil Court that in

17       some way had some information relating to this case?

18            THE WITNESS:  It was a case in Civil Court that

19       involved the allegations that Mr. Bohn made about the odors

20       emanating from the restaurant causing him to move out in

21       which we represent certain parties.

22            MR. FRIEDLAND:  May I speak, Judge?

23            THE COURT:  No, you're not a witness.  Let's move

24       on.  Anything else?

25       Q    The July 13, 2012 -- okay.

26            MR. BOHN:  Your Honor, I have to just report that

1                              Proceedings

2        we're now under a stay I filed for under Chapter 7 during

3        the pendency of this proceeding, so the proceedings are

4        stayed.

5              THE COURT:  Well, that's up to Judge -- I'm just

6        going to make a report to Judge Tingling and it's up to

7        Judge Tingling to decide whether or not to take any action

8        or refrain from taking action.

9              MR. BOHN:  Okay.  So we're going to proceed despite

10       the fact that --

11             THE COURT:  I'm going to finish this proceeding and

12       get this off my books.

13             MR. BOHN:  As long as that's on the record.

14             THE COURT:  If you have a bankruptcy stay that's

15       something you bring to Judge Tingling's attention.

16             MR. BOHN:  Okay.  Very good.  Okay, I don't have

17       any further questions.

18             THE COURT:  Okay.  In any event, I recommend, as I

19       said, $34,400 in fees to the Jaroslawicz firm or really on

20       behalf of the Jaroslawicz client, would be Steinhardt, and

21       $18,300 on behalf of Mr. Hanson's client.

22             MR. HANSON:  Your Honor, if I may, we also had

23       disbursements of $2,277.82.

24             THE COURT:  Okay.

25             MR. FRIEDLAND:  Actually, it's $2,308.28.  It

26       should be in Exhibit 1.

```
 1                        Proceedings

 2             THE COURT:  I'm just recommending the $18,300.  All

 3     right.  Who gave me this, the copy of the decision?

 4             MR. HANSON:  That's my copy.

 5             MR. FRIEDLAND:  Judge, if I may, on that issue on

 6     the bill that was submitted as Exhibit 1 by Mr. Hanson, the

 7     disbursements are itemized.  Those are real out of pocket.

 8             THE COURT:  I know.

 9             MR. FRIEDLAND:  That went for various filing fees

10     and legal attorneys' service fees.

11             THE COURT:  Right.  I've made my report.  Thank you

12     all very much.

13             MS. HOLMAN:  Thank you, Judge.

14             MR. HANSON:  Thank you, Judge.

15                        * * * * * * * * * * * *

16                   C E R T I F I C A T E

17

18     I, Karen M. Mennella, a Senior Court Reporter for the State of

19     New York do hereby certify that the foregoing is a true and

20     accurate transcription of my original stenographic notes.

21

22

23                                         Karen M. Mennella,

24                                         Senior Court Reporter

25

26
```

FILED

DEC 10 2013

NEW YORK
COUNTY CLERK'S OFFICE

12/9/13  So ordered
JHO

SCANNED ON 12/17/2013

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: _Milton A. Tingling_ 

*Justice*

PART 44

Theodore Bohn

176 W 87th St owners Corp

INDEX NO. 102357/11

MOTION DATE 12/9/13

MOTION SEQ. NO. 020

MOTION CAL. NO. 2

The following papers, numbered 1 to _____ were read on this motion to/for _____

PAPERS NUMBERED

Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... _____

Answering Affidavits — Exhibits _____

Replying Affidavits _____

Cross-Motion: ☐ Yes ☐ No

Upon the foregoing papers, it is ordered that this motion

This matter is hereby stayed pursuant to a bankruptcy filing by plaintiff

**FILED**

DEC 1 2 2013

COUNTY CLERK'S OFFICE
NEW YORK

Dated: 12/9/13                    _mar_

*J.S.C.*

Check one: ☐ FINAL DISPOSITION    ☒ NON-FINAL DISPOSITION

Check if appropriate: ☐ DO NOT POST    ☐ REFERENCE

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

**EXHIBIT 6**